Johnson, J.
 

 — This is an appeal by the complainant, from a decree of the chancellor, made in the late court of chancery, in favor of the defendant, Bradford R Wood, reversing a decree of the vice-chancellor of the eighth circuit, in favor of the complainant, against the said defendant and others. The single question in the cause is, whether the mortgage of Nathaniel Crosby and wife to the complainant, bearing date the 1st August 1837, is equitably entitled to priority over a judgment in favor of the defendant, Bradford B. Wood, against the said Nathaniel Crosby, and others, rendered in the supreme court, and docketed the 11th December 1835. .
 

 There is no grouhd, upon the evidence, to contend, that the complainant’s loan to Nathaniel Crosby was made upon the faith of the written memorandum given by Wood to Nathaniel Crosby, dated 11th May 1837, nor with a knowledge on the part of the complainant, dr Charles Crosby, of its existence; nor can it be claimed, that the mortgage to the complainant came within the meaning of the memorandum, either standing alone, or modified by the counter-memorandum signed by him, at the same time, and left with Wood. Not only is this so,
 
 *356
 
 but the subsequent acts of Nathaniel Crosby show, that he considered that proposed arrangement at an end.
 
 *
 
 0,70 -i Nathaniel *Crosby’s letter to Wood, of 1st July J 1837, is conclusive evidence of this proposition.
 

 On the 1st and 3d of July 1837, Nathaniel Crosby wrote to Wood, asking.him to send.a discharge of the judgment, and suggesting that it might be sent to James Mullett, or Judge Walworth, to be used at the same time that a new judgment should be executed. The purpose for which this discharge was asked is specified: it was, to enable him to borrow about $600 on mortgage to the loan-commissioners. The reason is also given: that without it he could not take the oath prescribed by the law. It is, therefore, entirely clear, that the discharge of the judgment was applied for solely to give priority to the mortgage for about $600 to the loan-commissioners.
 

 On the 8th day of July 1837, the defendant Wood executed and acknowledged a satisfaction-piece for the judgment, and the same, afterwards, came into the hands of Nathaniel Crosby, but at what particular time does not appear. No actual satisfaction of the judgment was ever received by Wood, nor was satisfaction ever entered of record, nor is there any evidence, that the complainants, at the time when the mortgage to them was executed, supposed,, or were informed, that the judgment in question was satisfied, or that the premises were free from incumbrances; nor is it proved, that at the-time when the mortgage to the complainants was executed, the satisfaction-piece was in the hands of Nathaniel Crosby. The most which, I think, we can. infer from the testimony is, that Nathaniel Crosby had possession of it, at the time when the mortgage to the loan-commissioners was executed. The date of that mortgage does not appear; but. from Mullett’s letter of 15th August 1837 (if that letter is to be deemed evidence against the complainants), it is to be inferred, that it
 
 *357
 
 was not executed earlier than the 7th August, as it was during the week commencing on that day, that the loan-commissioners distributed the loans in Fredonia. Moreover, Nathaniel Crosby, in his letter of 23d March 1839, does not pretend to affirm, that he had in his possession the satisfaction-piece, at the time of the execution of the mortgage in suit. He only says,
 
 “
 
 after the discharge was sent to Fredonia by Mr. Wood, I received” *the offer of a loan from the complainants. f Taking this statement in connection with the *- applications to Wood for the discharge, it may, in the absence of other evidence, be fairly inferred, that the discharge was sent in the manner in which it was requested that it should be sent. That, with the other papers, it was sent in a letter to Mullett, inclosed in one to Crosby, advising him of the contents of the letter to Mullett, and that upon this, he felt authorized to take the oath prescribed by § 25, c. 150,- Laws of 1837, that the premises proposed to be mortgaged were free from judgments; or else, that the oath was not required of him by the loan-commissioners; and that the satisfaction-piece did not come into his possession, until after the 15th August, when he delivered to Mullett the letter from Wood to Mullett, of 7th July, which inclosed the. papers.
 

 The judgment was, at the time of the execution of the mortgage, unsatisfied in fact of record, and a legal lien on the land, and no circumstances then existed, entitling the mortgagees to a priority in equity over this legal lien.
 

 The only remaining question is, whether the mortgagees have, by matters subsequently arising, acquired any right, which entitles them to be preferred in equity, over the judgment-creditor. To determine this question satisfactorily, it is to be borne in mind, that the conditions on which Wood had consented that the mortgage, to the loan-commissioners should take priority to his judgment, had not been performed by Crosby. From
 
 *358
 
 the testimony of Southwick, taken in connection with Crosby’s letter to Wood, of 1st July 1837, it appears, that in lieu of the old judgment, a bond and warrant of attorney to confess judgment to Wood, was to be executed by Nathaniel Crosby and Pearson Crosby, at the time when the discharge of the old judgment was to be put in Nathaniel Crosby’s possession. Pearson. Crosby never executed the new bond and warrant of attorney. The use of the discharge of the old judgment was, therefore, a fraud on the part of Nathaniel Crosby, even in respect to the mortgage to the loan-commissioners, and the retention of the discharge by Nathaniel Crosby was one continuing wrong. A court of equity would, as * 374 1 a§ains* Nathaniel Crosby, at any *time, have -* ordered it to be delivered up to Wood, or the supreme court would, on motion, have ordered the clerk not to enter the satisfaction on record:
 

 ' Under these circumstances, if Wood, upon the full consideration of the surrender to him by Nathaniel Crosby of the satisfaction-piece, had undertaken with him that the mortgage to the Crosbys should be preferred to his judgment, a court of equity would not have enforced that executory agreement in favor of the holders of the mortgage. The surrender of a paper, the retaining of which was unlawful, which a court of equity would have ordered to be' delivered up, is not such a consideration as will support an executory contract. The complainants in this suit, who are not parties to this agreement, and whose rights could in no degree be altered, by the preservation or surrender of the satisfaction-piece, are not, in respect to rights to be derived under this contract, in any better position than Nathaniel Crosby, and have not thereby acquired any equitable right, which entitles them to have their mortgage preferred over Wood’s judgment. The decree of the chancellor should be affirmed, with costs.
 

 Decree affirmed