be inscribed thereon commemorative of the deeds of those whose memories were sought to be perpetuated. The association had a right, and it was its duty, to have a voice in all these important matters, so that the final result should represent the deliberations and the determination of the entire body. If Mrs. Wright chose to apply the funds in her hands to the erection of a soldiers' monument without the direction of the association,—no matter how excellent that monument may be, nor how suitable, according to her ideas, as a soldiers' memorial,—yet her estate cannot, for these reasons, escape liability. This was not an enterprise where she and the other members were co-partners in this respect, and where her acts bound her associates. Lafond v. Deems, 81 N. Y. 507. Until, therefore, these moneys have been expended by the association, and have found lodgment in a memorial the location, materials, design, and inscriptions of which have been determined by the association charged with these duties, the trust imposed upon it and upon these funds will remain unadministered.

It appears that the defendant Roosa did not have in her possession, at the time the suit was commenced, any of the money or property sued for, and at that time Mrs. Wright had the custody of all such money and property. This is an action where a separate judgment may be rendered against either of the defendants. For these reasons, the plaintiff's counsel consents in his brief to a dismissal of the complaint as against the defendant Roosa, without costs; and the judgment may so provide. The plaintiff, as president, etc., may have judgment against the defendant Greene, as executrix of Mrs. Wright, for the sum of $776.66, with interest thereon from January 24, 1893, with costs, and also for the possession of the books, records, papers, and subscription lists of the association delivered to Mrs. Wright by the defendant Roosa on that date. Ordered accordingly.

---

(20 Misc. Rep. 197.)

### CORCORAN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Trial Term, Jefferson County. April, 1897.)

RAILROADS—MILEAGE BOOKS—CONSIDERATION OF CONTRACT.

A mileage book was sold under a contract which provided that it should be good only when presented to the train conductor with a passage ticket issued in exchange for coupons detached from the book, and recited as a consideration that the book was sold at a reduced fare. *Held* that, notwithstanding such recital, the contract was without consideration, and the purchaser was entitled to have the book accepted by conductors, where the railroad company was required, under a penalty, to issue mileage books at a certain price, and "to accept such mileage books for transportation" (Laws 1895, c. 1027, § 1), and the book in question was sold at the statutory price.

Action by James W. Corcoran against the New York Central & Hudson River Railroad Company to recover a penalty. A verdict was ordered for plaintiff, and defendant moves for a new trial. Denied.

Purcell & Carlisle, for plaintiff.

D. G. Griffin, for defendant.

SCRIPTURE, J.   In this action, the facts not being disputed, a verdict was ordered for the plaintiff, for the amount of the penalty. It appeared on the trial:   That on the 22d of October, 1895, the plaintiff purchased of the defendant a mileage book entitling him to travel 1,000 miles on the line or lines of such railroad, for which he paid the sum of $20.   At the time of the purchase of the mileage book the plaintiff signed the following:

"Contract.

"The conditions under which this mileage book is sold by the New York Central & Hudson River Railroad Company, as lessee of the Rome, Watertown & Ogdensburg Railroad, and purchased and used by the person named hereon, are:

"First. It is only good for passage on the train when presented to the conductor with a passage ticket which has been received in exchange for the coupons which have been detached from this book. The passage ticket given in exchange for such coupons is subject to all the conditions in this contract, being good only for a continuous passage within the time named therein, and no stop-over will be allowed.

"Second. Neither this mileage book nor the coupons attached to it are of any value unless stamped by selling agent and signed by the purchaser. Purchaser's signature must be witnessed by agent of the company selling this mileage book.

"Third. It is absolutely nontransferable. If presented on the train by any other than the original purchaser, it is void and forfeited, and the conductor is hereby authorized by purchaser to take up this mileage book and passage ticket presented with it by person to whom it is transferred, and the conductor will collect the fare.

"Fourth. Purchaser agrees to give proof of identification by written signature or other means, when required by the ticket agent or conductor.

"Fifth. No extension of time limit or refund for unused coupons of this mileage book will be granted.

"Sixth. Coupons of this book will not be received in exchange for a passage ticket, unless they have been detached by the agent.

"Seventh. This mileage book does not entitle the purchaser to stop at any point which is not designated on the time card as a regular stopping place for trains, and the passage ticket issued in exchange for coupons taken therefrom will be good only for passage on trains which are advertised to stop at the stations named thereon.

"In consideration of this book being sold at a reduced fare, the undersigned agrees to purchase and accept it upon the above conditions, which he or she has read and fully understands, and hereby undertakes to abide by in every case.

"J. W. Corcoran, Purchaser.<br>"Geo. W. Brown, Witness.

"October 22, 1895."

That thereafter, and on or about October 24, 1895, and while the plaintiff was owner and holder of the said mileage book, a large number of miles of which had not been ridden upon, used, or taken up, and more than sufficient to pay his railroad fare on defendant's road between the villages of Pulaski and Richland, in the county of Oswego, went to the train at Pulaski, arriving there about the time it was ready to depart.   The ticket agent not being in the office, but outside on the platform at the time, the plaintiff boarded the train without going to the office, or asking the agent for a mileage exchange ticket, or requesting the train to be held until he had time to procure an exchange ticket.   When the train was under full head-way, the defendant, by its conductor, demanded of the plaintiff his ticket for his passage on the train.   Thereupon the plaintiff handed

and tendered the defendant his said mileage book for transportation from Pulaski to Richland.    The defendant and its conductor refused to accept the same, stopped the train, and ejected the plaintiff therefrom.

Chapter 1027, Laws 1895, reads:

Section 1: "Every railroad corporation operating a railroad in this state, the line or lines of which are more than one hundred miles in length, and which is authorized by law to charge a maximum fare of more than two cents per mile and not more than three cents per mile, shall issue mileage books entitling the holder thereof to travel one thousand miles on the line or lines of such railroad, for which the corporation may charge a sum not to exceed two cents per mile. Any railroad corporation which shall refuse to issue a mileage book as provided by this section, or, in violation thereof, to accept such mileage book ·for transportation, shall forfeit $50, to be recovered by the party to which such refusal is made; but no action can be maintained therefor unless commenced within one year after the cause of action accrued."

The plaintiff, being the owner and holder of the mileage book, was entitled to ride upon defendant's road from Pulaski to Richland, and defendant was bound to accept such book for transportation, or forfeit for such refusal $50, unless the defendant made a valid contract with the plaintiff whereby he was bound to present to the conductor, with his book, a passage ticket received in exchange for coupons detached from his mileage book by the ticket agent.

The defendant contends that the contract in the back of the book, signed by the purchaser at the time of its receipt, was binding upon the parties, although it· was not in conformity with the terms of the statute, it being a contract not opposed to public policy.    The defendant does not claim that it adopted and promulgated rules and regulations for the using of the mileage book, but relies entirely upon the so-called "contract," giving as a consideration a reduced fare.    If the defendant had promulgated rules and regulations for the issuing of this book which were reasonable and proper in the discharge of their duty in that regard, a question not free from difficulty would be presented.    In this case, defendant insists that it could and did make a valid contract, which rendered ineffectual all the obligations which the statute compelled the defendant to perform.    Three things must concur to constitute a valid and binding contract, namely, competent parties, subject-matter, and a valuable consideration.    We have in the alleged contract competent persons, a subject-matter, but not a valuable consideration.    Simple contracts are those whose validity does not depend upon their form, but upon the presence of a consideration.    With the exception of contracts under seal and contracts of record, every contract requires a consideration to support it. A valuable consideration, in the sense of the law, may consist either in some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other.    In this case there is an entire absence of any consideration, and, while the so-called contract states "it was issued at a reduced fare," it was not.    The plaintiff paid $20, which was all the defendant could demand for the mileage book.    It seems well settled that the performance of an act which a party is under a legal obligation to perform cannot constitute a consideration for a

new contract. Pollock states the rule as follows: That "neither the promise to do a thing nor the actual doing of it will be a good consideration if it is a thing which the party is bound to do by the general law, or by a subsisting contract with the other party." Pol. Cont. 161; Crosby v. Wood, 6 N. Y. 369. Nor is the performance of that which the party was under a previous valid legal obligation to do a sufficient consideration for a new contract. Vanderbilt v. Schreyer, 91 N. Y. 401; 2 Pars. Cont. 437. Seybolt v. Railroad Co., 95 N. Y. 562, was a case where a mail agent was killed by an accident on defendant's road. Upon the pass issued for his use by defendant was an indorsement by which it stipulated for an exemption from liability from damages on account of injuries occurring through its negligence. Under the contract between the United States government and the defendant in reference to the carrying of mail. it was provided that any railroad company carrying the mail shall carry on any train which may run over its road, and without extra charge therefor, all mailable matter directed to be carried thereon, with the person in charge of the same. The court held in this case (Ruger, C. J., writing), that, as the defendant was under a legal obligation to carry the deceased, the promise to carry him if he would make a new contract limiting its liability was without consideration, and at page 575 says:

"We are of the opinion that the agent's acceptance of the pass under the circumstances of this case did not indicate an intention to assent to the provisions therein contained, and, even if it might be so construed, that the want of a consideration for such an agreement rendered it nudum pactum."

The legislature had said to this defendant, "You must issue a mileage book for $20, and you must accept it for transportation." For the purpose of evading this direct and mandatory statute, the defendant attempted to make a new contract, giving as a consideration a reduced fare, but as a matter of fact no reduction of fare was made. There was no consideration to support the alleged contract. The plaintiff was entitled to ride upon defendant's road, and defendant was bound to accept the mileage book for transportation, or in violation thereof forfeit $50. The legislature evidently intended that the mileage books should be used for transportation. Other railroads were accepting them on the trains without tickets, and the act declares, "and shall accept the same for transportation." By chapter 835 of the Laws of 1896 the act in question was amended so as to require a mileage exchange ticket to accompany the book, showing the plain intent and meaning of the legislature.

Motion for a new trial denied. Motion denied.