TROLAN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. June 18, 1898.)

CARRIERS—MILEAGE BOOKS—RIGHT TO ISSUANCE.

Laws 1896, c. 835, § 1, provides that all railroads operating lines in New York shall issue mileage books entitling the holder, "upon complying with the conditions hereof," to travel 1,000 miles; that such mileage books shall be kept for sale at every ticket office of the company in an incorporated village or city, and shall be issued immediately on application; that the holder, or any member of his family, or firm, or a salesman of such firm, is entitled to use such book; and that any railroad refusing to issue mileage books as provided therein shall forfeit $50 to the party refused. *Held*, that it is not a condition precedent to the right of an applicant to receive a mileage book to disclose the names of the members of his family, etc., and sign a contract, and a refusal to issue a book on such ground was a violation of the statute.

Appeal from Jefferson county court.

Action by John C. Trolan against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Purcell, Walker & Burns, for appellant.
John C. Trolan, in pro. per.

HARDIN, P. J.    Plaintiff alleges that on the 15th of January, 1897, he applied at the ticket office of the defendant in the village of Antwerp (that being a village duly incorporated under the laws of the state)—

"For the purchase of a mileage book entitling the holder to ride or travel one thousand miles on said road, and tendered and paid to the agent and officer of defendant in charge of said office the sum of twenty dollars in payment for said book; that the defendant returned said money to plaintiff, and refused to issue said book or sell the same to this plaintiff, or to accept the money paid therefor, and still neglects and refuses to, and refuses to issue or sell said mileage book as provided by chapter 835, Laws 1896,—the laws of the state of New York."

The complaint demanded judgment for $50, the penalty provided in the statute.

It is provided in chapter 835 of the Laws of 1896, that:

"Any railroad corporation which shall refuse to issue a mileage book as provided by this section, or, in violation hereof, to accept such mileage book for transportation, shall forfeit fifty dollars, to be recovered by the party to which such refusal is made; but no action can be maintained therefor unless commenced within one year after the cause of action accrues."

This action was commenced on the 16th day of January, the next day after the transaction alleged to have taken place between the plaintiff and the defendant's agent at Antwerp.

The defendant, in its answer, admitted that it was a domestic corporation, and that it is—

"Engaged in transportation of passengers and freight for hire, and is engaged in operating the railroad known as the Rome, Watertown & Ogdensburg Railroad, and also the Utica & Black River Railroad,—said road running

52 N.Y.S.—17

from Rome to Ogdensburg and Massena, N. Y., and from Utica to Ogdensburg, N. Y., respectively, with branches connected therewith; that the line of said road is more than one hundred miles in length, and entirely within the state of New York."

The answer further alleges:

"That said defendant, as such lessee, is authorized by law to charge a maximum fare of more than two cents per mile, to wit, the sum of three cents per mile, and does charge a maximum rate of three cents per mile for passengers riding over said road; that village of Antwerp is an incorporated village."

The answer denies the other allegations of the complaint, and contains no other defense.

Plaintiff, as a witness in his own behalf, testified that on the 15th of January, 1897, he called at the ticket office of the defendant in the village of Antwerp, where Mr. J. G. Clark was ticket agent; and he adds:

"I handed Mr. Clark a $20 bill, and said I wanted a mileage book. Clark took the money, and asked me for the names of my family."

The witness adds that Clark particularly named his housekeeper, and in response thereto the plaintiff testified he replied, viz.:

"I said, 'Never mind about that. Just make out the book.' And I left the office, and came down street. When I came back I stepped to the office to get the book, and Mr. Clark said it was necessary to have the names of the members of my family written on the book; and he showed me the book, where he had written on some name; and he said they couldn't ride on the book unless their names were in it, and that I would have to sign a contract that was printed on the inside cover of the book. I said I wouldn't sign any contract, neither would I give him a list of the members of my family, and said that I didn't believe the railroad company had any right to exact that as a condition on selling the book. He said those were his instructions from the company, and he couldn't issue a book unless they were complied with. I stepped away from the ticket window, and, a few minutes after, Mr. Clark came into the waiting room, where I was, and returned me my money, $20, and said unless I was willing to sign the contract he couldn't sell me a book, and that unless my family names were on the book they couldn't ride on it. Then I said to him that I wanted the book, and would take any chances on the family riding on it, whether their names were in it or not, but he said unless I signed the contract I couldn't have the book. I soon after took the train."

A book was shown the witness, and he conceded "that these are copies of the contract, and of the covers of the book in which the contract was contained, which he was requested to sign." That book was offered in evidence by the defendant, and received, and was marked "Exhibit A." At the close of the evidence the defendant moved for a nonsuit on the ground "that plaintiff has not proven facts sufficient to constitute a cause of action, and that the request made by Mr. Clark, the agent, was proper and reasonable." The motion was denied.

Section 1 of chapter 835 of the Laws of 1896 applies to the defendant, as one of the corporations mentioned therein; and the statute provides that such corporations—

"Shall issue mileage books having one thousand coupons attached thereto, entitling the holder thereof, upon complying with the conditions hereof, to travel one thousand miles on the line or lines of such railroad, for which the corporation may charge a sum not to exceed two cents per mile. Such mile-

age books shall be kept for sale by such corporation at every ticket office of such corporation in an incorporated village or city and shall be issued immediately upon application therefor. The holder of any such mileage book shall be entitled, upon surrendering, at any ticket office on the line or lines of such railroad coupons equal in number to the number of miles which he or any member of his family or firm, or a salesman of such firm wishes to travel on the line or lines of such railroad to a mileage exchange ticket therefor. Such mileage exchange ticket shall entitle the holder thereof without producing the mileage book upon which such exchange ticket was issued, to the same rights and privileges in respect to the transportation of persons and property to which the highest class ticket issued by such corporation would entitle him. Such mileage books shall be good until all coupons attached thereto have been used."

There is nothing in the statute which required the plaintiff to disclose the name or names of the members of his family. He had the right to purchase a mileage book in his own name, and for himself exclusively. Any omission to give the names of his family or his firm would simply deprive them of the opportunity to use the mileage book. It is expressly provided that the mileage book shall entitle the holder to travel 1,000 miles, upon compliance with the conditions of the statute. The statute does not, in terms, authorize the railroad company to annex a contract to the mileage book, and require the plaintiff to sign the same, as a condition of receiving it from the railroad company. In Corcoran v. Railroad Co., 25 App. Div. 483, 49 N. Y. Supp. 703, it was said in the opinion:

"The statute is absolute that the mileage book should be issued upon the payment of the required sum, and that mileage book entitled the holder to transportation upon the cars. Any condition to the exercise of this right not warranted by the statute was a violation of the spirit of its provisions, and could not be enforced."

We find nothing in the statute of 1896 which authorized the defendant to require the plaintiff to subscribe his name to a written contract, as a condition precedent to receiving a mileage book. As said by the learned county judge:

"The effect of such subscription would have been to estop the purchaser from afterwards questioning the validity of such rules and regulations; and this, in my [his] judgment, was a condition the defendant had no right to exact."

The foregoing views lead to an affirmance.

Judgment of the county court of Jefferson county affirmed, with costs. All concur, except FOLLETT, J., not voting.