ELIZA J. PRICE v. THE FIRST NATIONAL BANK OF ATCHISON, KANSAS.

62 743
s65 853

No. 11,888. (64 Pac. 639.)

1. ASSIGNMENT OF INSURANCE POLICY — *Insufficient Consideration.* An agreement to forbear and forbearance from issuing execution on a judgment, which clearly has no legal existence and on which no execution could lawfully issue, are not sufficient consideration for a new promise on the part of a supposed judgment debtor.

2. ———— *Payment of Extinguished Judgment — Assignment Void.* In such case an assignment, as collateral security, of an insurance policy on the life of a husband, made through a mistake of the law by the wife, the beneficiary therein, cannot be upheld, when the assignment, in legal effect, provides that the proceeds of the policy shall be applied to the payment of the amount justly due on such judgment. The judgment having been

extinguished, nothing is due on it, and the insurance money cannot be applied by the assignee in substantial compliance with the terms of the contract.

Error from Atchison district court; W. T. Bland, judge. Opinion filed April 6, 1901. *In banc.* Reversed.

### STATEMENT.

This was an action originally brought in the district court by the New York Life Insurance Company, alleging a controversy between Eliza J. Price and the First National Bank of Atchison, Kansas, as to the proceeds of a policy of insurance which was issued on the life of John M. Price, husband of Eliza J. Price, on the 11th day of July, 1865, and praying that the insurance company might be permitted to pay into court the sum of money due on the $5000 policy, and that it be further relieved from any liability in the premises. An order was subsequently made, with the consent of all the parties, for the payment of the money into court by the insurance company, relieving it from further liability, and providing that issues should be joined between said bank and said Eliza J. Price, widow of said John M. Price, who died in October, 1898. The bank and the widow interpleaded in the action, and the only controversy in this case is between them, the insurance company having paid the money into court in pursuance of said order.

It appears by the record and the pleadings, which are voluminous, that in 1890 John M. Price and his wife were indebted to the bank in about the sum of $10,000. On July 10 of that year, Price and wife executed to the bank two renewal notes therefor, and conveyed, by deed, to David Auld, in trust for the bank, to secure said renewal notes, several parcels of real estate in the city of Atchison and vicinity,

Auld at the time giving back to them a written defeasance. The deed was withheld from record, and Price was permitted to rent, mortgage and dispose of the property as he chose. In the fall of 1893, the homestead property of Price and wife, which was not included in said deed, had been sold for delinquent taxes, amounting at that time to about $1200, on which sale a deed was due in September, 1893. There was also a mechanic's lien against the homestead for $1100. Price went to the bank to borrow money to pay the liens and taxes. The application was at first refused, but afterward the bank wrote him a letter asking him to call, and finally offered to loan him $3200 in cash, and thereafter to loan him $600 more, upon condition that he include the homestead, which was worth about $10,000, in the security for the new loan, and also make the homestead liable for the old loan. In addition thereto the bank asked that he assign to the bank the policy in controversy in this action, and another policy for $3000, issued by the Kansas Mutual Life Insurance Company, not paid up. This arrangement was made in the absence of Mrs. Price, although the policies of insurance referred to were both payable to her as beneficiary. The papers were prepared by the bank, and were sent by a notary in the bank's employ to Mr. Price's office where they were executed by Price and wife. The assignment of the policy in this action was in the following words :

"For value received, we hereby transfer, assign and deliver to the First National Bank of Atchison, Kansas, life policy number 26,050, with all our right, title and interest in and to the same, issued by the New York Life Insurance Company to John M. Price, of Atchison, Kansas, and payable, on the death of said John M.

Price, to Eliza J. Price.   Amount of policy, five thousand dollars ($5000).

"And it is agreed that when this policy shall become payable the insurance therein named shall be paid to the First National Bank, and its receipt therefor shall be a full satisfaction of said policy.

JOHN M. PRICE.

ELIZA J. PRICE."

That assignment was made and the policy was delivered to the bank by John M. Price on the 19th of January, 1894, at which time the bank paid to Price the $3200, less the amount required to pay the taxes and mechanic's lien on the homestead, which were paid by the bank.   On the same day the bank took two renewal notes of $4434.10 each, for the balance due it upon the old debt of $10,000, contracted prior to 1890, and on which payments had been made, and these two renewal notes, together with the notes for the $3200, and twelve notes for $50 each, for the amount which the bank agreed to loan in the future, were all included in the new mortgage, which covered the homestead alone, while the two notes of $4434.10 each remained secured by the deed previously given to Auld in trust for the bank as renewals of the original debt.   All these notes drew interest at ten per cent. per annum,.

On the 21st of March, 1896, the bank brought a suit in foreclosure, case No. 7907, against Price and wife, to foreclose the mortgage last given, to wit, upon the homestead, and in said action took a personal judgment on all of said notes against Price and wife for $16,-729.09, and an order for the sale of the homestead and application of the proceeds.

After bringing said action the bank brought another action, No. 7908, based upon renewals of the two renewal notes of $4434.10 each, to recover a personal

judgment against Price and wife thereon, and to fore-
close the deed given to Auld as a mortgage to secure
the same ; and after the rendition of said judgment of
$16,348.44, in said action No. 7907, the bank recovered
judgment in the other action brought subsequently
upon said two notes, and the interest thereon, which
last judgment amounted to $11,729.09, against Price
and his wife, and in said action a foreclosure of said
deed was decreed, and the property therein described
was ordered sold and the proceeds applied to said last-
named judgment.

Soon after the rendition of the last judgment, a
stipulation was entered into between the bank and
Price and wife, in which it was agreed as follows :

"(1) That execution shall be stayed on such judg-
ment of foreclosure in said cause No. 7907 for ten
months from the rendition thereof ; (2) that in case
the said John M. Price and Eliza J. Price shall fail to
keep the taxes promptly paid on the real estate herein-
before described in said first-entitled cause, No. 7907,
and to keep said premises well and adequately insured
for the benefit of the said plaintiff bank, then and in
such event or failure said bank may pay all such taxes
and insurance, and keep the said property free and
clear of all taxes and liens and adequately insured up
to the time of the sale of such property on execution
under such judgment."

It was therein further agreed that said bank was to
retain in its possession said policies of insurance on
the life of said John M. Price as collateral security,
and, if the said policies should mature and payment
of death losses thereon be made before the sale of said
homestead under execution, the proceeds of the poli-
cies should be applied on said judgment in said case
No.' 7907 ; and in case of sale thereof before the said
policies should mature, and if the proceeds of the sale

should be insufficient to satisfy such judgment in case No. 7907, then said policies of insurance were still to be retained by the bank, "to secure whatever deficiency there may then remain unpaid on such judgment 7907, until such deficiency is fully paid or until the said life policies mature, and on said maturity and payment thereof such balance then remaining unpaid on said judgment shall be paid and satisfied in full out of the proceeds of such life policies, and the balance, if any, is to be paid over by said bank to the parties entitled thereto."

There was also an agreement in said stipulation that in case Price and wife should fail to pay or cause to be paid the accruing premiums on the Kansas Mutual policy, the bank was to pay such premiums, upon written notice served on it by Price and wife "and whomsoever may be interested in said policies as beneficiaries, a reasonable time in advance of the accrual of each of such payments of premiums or assessments, of their inability to pay, and their desire that said bank pay the same," and it was provided that the bank should only be reimbursed for such payments, if any, which it might make, out of the proceeds of the sale of the property which was originally foreclosed in action No. 7907. This stipulation was dated May 21, 1897, but the court below found that it was executed "some two months after said date." It was signed by the cashier of the bank and by Price and wife. It does not appear that the bank ever paid any premiums on said Kansas Mutual policy or made any other outlays after the execution of said stipulation.

So far as is shown in the evidence, Mrs. Price never made any other agreement with the bank or its officers than as hereinbefore stated.

*Waggener, Horton & Orr*, for plaintiff in error.

*C. D. Walker*, and *J. L. Berry*, for defendant in error.

The opinion of the court was delivered by

ELLIS, J. : The insurance policy in the New York Life Insurance Company had been paid up since 1874, and was the property of Eliza J. Price, the beneficiary named therein. The unconditional assignment to the bank of January 19, 1894, was void, because such bank could not have an insurable interest in the life of John M. Price. (*Life Ins. Co. v. Sturges*, 18 Kan. 93.)

Parol evidence was admissible for the purpose of showing that, although such assignment was absolute on its face, the real intent of the parties was that the insurance policy should be turned over to the bank under such assignment for the purpose of collateral security merely. To show such an intention, it was necessary to prove an agreement to that effect between the bank and the owner of the policy, Eliza J. Price, for there was no evidence in the case that John M. Price had authority to act as her agent in that behalf, and his agency could not be presumed from the mere fact that he was her husband. The only evidence in the record showing any agreement other than an unconditional assignment on the part of Mrs. Price is the stipulation bearing date May 21, 1897, and entered into some time after that date. That stipulation, if based upon a sufficient consideration, might be held to be a ratification of a former agreement which seems to have been entered into with John M. Price, to the effect that the bank should hold the policy as collateral security, subject, however, to the reservation that it should only be held as collateral security for the payment of whatever should

be justly and legally due on the judgment rendered in action No. 7907, for such were the express terms of the stipulation.

The court holds in this case that at the time of the execution of such stipulation that judgment was extinguished; that the debt thereby evidenced had been merged in the judgment rendered later by the district court of Atchison county in action No. 7908, between the same parties. For the reasons for such decision and the authorities upon which the same is based, reference is hereby made to the opinion of Mr. Justice GREENE in the case of *Price v. Bank*, ante, p. 735, 64 Pac. 637. The only consideration for such stipulation is the agreement on the part of the bank to forbear to issue execution on said judgment in No. 7907 for the period of ten months from the date of its rendition. Because the judgment was extinguished, because it no longer existed, the plaintiff had no right to cause an execution to issue on it within ten months or at any other time. An agreement to forbear to do an act which a party has no legal right to do cannot constitute a sufficient consideration for a promise and undertaking on the part of another.

"In order to constitute forbearance a valuable consideration there must be a subsisting legal right in the claimant which he agrees to forbear, for if the claim be invalid or illegal the forbearance is ineffectual." (6 A. & E. Encycl. of L., 2d ed., 742.)

See, also, *Gould v. Armstrong*, 2 Hall (N. Y.) 90; Chit. Contr. 35, 36; *Bates v. Sandy*, 27 Ill. App. 552 and cases cited; *Haynes v. Thom*, 8 Foster (N. H.) 386; *May v. Coffin*, 4 Mass. 341, 347; *Warder & Al. v. Tucker*, 7 Mass. 449; *Robinson v. Jewett*, 116 N. Y. 40, 22 N. E. 724; *Widiman v. Brown*, 83 Mich. 241, 47 N. W. 231; *Cowper v. Green*, 7 Mees. & W. 633; *Mc-*

*Donald v. Neilson*, 2 Cow. (N. Y.) 140 ; *Crosby v. Wood*, 6 N. Y. 369 ; *Cline & Co. v. Templeton*, 78 Ky. 550 ; *Schroeder v. Fink*, 60 Md. 436 ; *Gunning. v. Royal*, 59 Miss. 45 ; *Davisson v. Ford*, 23 W. Va. 617 ; *Appeal of Lukens*, 193 Pa. St. 386, 13 L. R. A. 581, 22 Atl. 892.

In the case of *Wade v. Simeon*, 2 C. B. 548, the declaration averred that the plaintiff had brought an action, and in consideration of the new promise had forborne to prosecute the case thus commenced. The court held that the previous action could not have been maintained, and in the opinion said :

"In order to constitute a binding promise the plaintiff must show a good consideration ; something beneficial to the defendant or detrimental to the plaintiff. Detrimental to the plaintiff it cannot be, if he has no cause of action ; and beneficial to the defendant it cannot be ; for, in contemplation of law, the defense upon such an admitted state of facts must be successful."

In the case of *Graham v. Johnson*, L. R. 8 Eq. 36, the defendant held a bond executed by the plaintiff which the latter was entitled to have canceled as being voluntary. At the plaintiff's request the defendant forbore suit on the bond, the plaintiff agreeing to pay from an expected inheritance. It was held, nevertheless, that the plaintiff was entitled to a decree of cancelation and that the promise to pay the defendant was not binding. In rendering the opinion the court said :

"The question I have to consider is, whether, assuming, as I must assume, that the plaintiff when he made the promise was ignorant that the court of chancery would restrain an action on the bond without requiring him to pay off what had been paid by Barlow to the obligee, his promise made in consideration of Barlow's forbearance to sue is binding on him, I think it is not."

And following, the court expressly held that, because the action could not have been maintained, the agreement to forbear would not be a consideration for a promise of the defendant to pay.

We have examined the cases of *Callisher v. Bischoff-scheim*, L. R. 5 Q. B. 449, and *Ockford v. Barelli and another*, 25 L. T. (n. s.) 504, which are sometimes quoted as antagonizing, though they do not overrule *Wade v. Simeon*, supra, and *Graham v. Johnson*, supra. They were considered and decided as cases of compromise and are clearly distinguishable from the case at bar.

In *N. H. Savings Bank v. Colcord*, 15 N. H. 119, the court held that forbearance to sue is not a good consideration for a promise where there is no debt in existence.

In *Gould v. Armstrong*, supra, the court held : "A promise to forbear from prosecuting a suit which could not be maintained would, of course, be without consideration, and so not binding."

In Chitty on Contracts, *supra*, the rule is laid down that, in order to render the agreement to forbear and the forbearance of a claim a sufficient consideration for a new promise, it is essential that the demand forborne should be sustainable at law or in equity, and the consideration will fail if the demand is without foundation.

In *Haynes v. Thom*, supra, the court held : "A promissory note, given to discharge a merely supposed liability or to avoid an ideal danger, which has no foundation in fact or in law, is without consideration."

And in the same case the court said :

"If the note was given under a misapprehension of the defendant's liability, and with no valid consideration passing between the parties, he is not bound to

pay it. An ideal danger, which has no foundation in fact or in law, can form no consideration for a note."

In *Appeal of Lukens*, supra, the supreme court of Pennsylvania held : "Abandonment of legal proceedings which are without merit is no consideration for the revocation of a valid and binding contract." The case of *Prout v. Pittsfield Fire District*, 154 Mass. 450, 28 N. E. 679, was purely one of compromise. The court said : "The plaintiff's claim, whether on a final determination it might or might not be found to be valid, was sufficiently substantial to furnish a good consideration for the compromise." In the same opinion it was remarked :

"The case of *Palfrey v. Portland, Saco & Portsmouth Railroad*, 4 Allen, 55, is to be distinguished on the ground that there it was plain that the plaintiff had no real claim to be compromised ; and *Wade v. Simeon*, 2. C. B. 548, rests on the same ground."

In *Robinson v. Jewett*, supra, it was decided that the performance of an act which the party is under a legal obligation to perform cannot constitute a consideration for a new promise. In *Moon v. Martin*, 122 Ind. 211, 23 N. E. 668, the court sustained a compromise of a suit actually commenced, and held that the discontinuance of the suit was a sufficient consideration for a promise to pay money. But in the same case the court held :

"A promise to give something for the compromise of a claim about which there is merely a dispute and controversy, and for which there is no legal foundation whatever, is not sufficient to sustain a suit at law. (*Jarvis v. Sutton*, 3 Ind. 289 ; *United States Mortgage Co. v. Henderson*, 111 id. 24, 12 N. E. 88, and cases cited ; *Emery v. Royal*, 117 id. 299, 20 N. E. 150, and cases cited.)"

48—62 KAN.

In *Cline & Co. v. Templeton*, supra, the court said :

"It is laid down, both in Parsons on Contracts and in Chitty on Contracts, that an agreement to forbear to prosecute a claim which is wholly and certainly unsustainable at law or in equity is no consideration for a promise. . . . This proposition appears to be so well established that further citation of authorities seems to us unnecessary."

In *Schroeder v. Fink*, supra, defendants' father died owing plaintiff and the latter threatened suit. In consideration of his forbearance, defendants gave their note in compromise of the claim. The estate of deceased was insolvent and plaintiff could have no action against defendants. In the action upon the new note, the court held that there was no consideration for the new promise and that defendants could not be held liable to pay. In *Gunning v. Royal*, supra, it was held that "the existence of a dispute or controversy between parties is not a sufficient consideration to support a promise to pay money in settlement of it, where no valid demand for anything whatever exists in favor of the promisee." In *Davisson v. Ford*, supra, the syllabus reads : "If there is no foundation for such claim of liability, then the promise made to settle this assumed liability has no sufficient consideration to sustain it and no suit can be based on such promise." At page 627 the court said :

"But to make such consideration good it is not only necessary that the dispute should be one in which one party sets up that there was a liability on the other, but if it be assumed that such liability exists, when in fact or law there is no foundation for such liability, a promise made by the party who is thus claimed to be liable, but who clearly is not liable either in law or equity, would be a promise made on no valuable or sufficient consideration, and it could not be enforced by suit."

"As the consideration must have some value and reality, the assumption of a supposed danger or liability, which has no foundation in law or in fact, is not a valuable or sufficient consideration, nor is the performance of that which the party was under a previous valid legal obligation to do; and where one, through mistake of the law, acknowledges himself under an obligation which the law does not impose, he is not bound by such promise." (1 Pars. Contr. 437.)

In the case at bar the bank did not stipulate to refrain from doing any act which it had a legal right to do. Mrs. Price, supposing herself liable to pay the judgment rendered in No. 7907, agreed to turn over to the bank the insurance policy in controversy in this case, with the understanding that the proceeds of such policy should be applied by the bank in satisfaction of such extinguished judgment. As the judgment itself had no legal existence the funds could not have been so applied. She acknowledged herself "under an obligation which the law does not impose," for which reason she "is not bound by such promise."

For these reasons the judgment of the district court will be reversed, and the case remanded, with directions to enter judgment in the court below in favor of Eliza J. Price and against the First National Bank of Atchison, Kansas, in accordance with this opinion.