No. 28,723.

FRED HOFFMAN, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

(281 Pac. 935.)

Opinion filed November 9, 1929.

*William R. Smith, Owen J. Wood, Alfred A. Scott, Alfred G. Armstrong,* all of Topeka, and *Chester Stevens,* of Independence, for the appellant.

*Joe W. Moss,* of Independence, and *Charles D. Welch,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The defendant railway company appeals in this case from a verdict and judgment rendered against it for $329.61 as

and for damages sustained by the plaintiff for breach of a written contract made by the defendant company with the plaintiff, and its failure to comply with its subsequent oral contract made with the plaintiff.

The petition alleges that plaintiff shipped two carloads of hay over the defendant's railroad from Elk City, Kan., to Kansas City, Mo., consigned to shipper's order, with instructions to notify the Carlisle Commission Company, Kansas City, Mo. The bills of lading issued to shipper at Elk City, Kan., were sent with drafts attached to them to a bank in Kansas City. The bills of lading each contained the following provision:

"The surrender of the original order bill of lading, properly indorsed, shall be required before the delivery of the property. Inspection of property covered by the bill of lading will not be permitted unless provided by law or unless permission is indorsed on the original bill of lading or given in writing by the shipper."

It is further alleged that no permission in writing or otherwise was given by the plaintiff for an inspection of the hay before surrender of the bills of lading, but that the defendant railway company, in violation of the terms of the bills of lading, permitted the commission company to open the cars and inspect the hay, taking part of it out of the cars and later putting it back, and thereafter the commission company refused to accept the hay and take up the drafts and bills of lading. No actual injury to the hay or loss of any part of it is alleged.

The petition further alleges that upon hearing of the refusal of the commission company to accept the hay, plaintiff went to Kansas City, Mo., to inquire as to the situation, and the assistant freight agent of the defendant company orally informed him as follows:

"That he should not have made a trip to Kansas City from Elk City, Kan., to inquire about said two cars of hay; that if the Carlisle Commission Company did not accept and pay for said hay, the defendant company, under the circumstances, would pay this plaintiff for said hay; that under the terms of the bills of lading the said Carlisle Commission Company should not have been permitted to break the seals on said two cars and should not have been permitted or given the right by defendant company to inspect said hay or to plug said two cars of hay or to take any hay from the cars without the original bills of lading; that said commission company was under a bond to the defendant company and the defendant company would see to it that the said commission company paid said drafts and accepted the two cars of hay or that the railway company, under the circumstances, would pay this plaintiff the amount of the drafts he had drawn. Said agent further informed this

plaintiff to go home and make out a claim and a demand for payment and present them to defendant's agent at Elk City, Kan., the point of shipment; to include in such claim and demand for payment not only the amounts for which said drafts were drawn for, but also the amount plaintiff had expended for car fare in coming to Kansas City, and also a reasonable amount for his time in so coming."

And thereupon the plaintiff orally informed the agent that if the commission company did not pay for the hay he would hold the defendant company liable. It is further alleged that upon his return home he made out and filed such claim with the local agent of the defendant company at Elk City and later received word from another officer of the company that the claim would not be allowed, and that the hay would be sold if not cared for by plaintiff; that it later was sold, but the plaintiff has not yet received anything for it, and that by reason of the acts of the defendant the plaintiff has been damaged.

The defendant moved to strike out all references to the trip of plaintiff to Kansas City and the alleged contract with the assistant freight agent, and after the motion was overruled filed its answer, which in addition to a general denial admitted the shipment of the two cars of hay and the inspection thereof by the commission company and its refusal to accept the same, then alleged notice of sale of hay, the sale of same with statement of proceeds and expenses, and tendered balance into court.

Upon the trial defendant moved for judgment for defendant upon the pleadings, later objected to the introduction of evidence because no cause of action was stated in favor of the plaintiff and against defendant, and at the close of the testimony of plaintiff demurred to the evidence, all of which were overruled, and no evidence being offered by the defendant, the court instructed the jury. After the verdict of the jury a motion for a new trial was overruled and notice of appeal served.

Numerous errors are assigned, but they can all be centered on the sufficiency of the allegations of the petition to constitute a cause of action, the sufficiency of the evidence to support the same and the errors, if any, in the instructions. We will consider them all together. While the breach of the provisions of the bill of lading is not set out in the petition as a separate cause of action, yet the court in its instructions and the appellee in his brief so treat it, and we will therefore consider it as a separate cause of action, and later consider it again with the subsequent allegations

as a consideration for the alleged oral contract in harmony with the evident theory of the appellee and the trial court. The first question is, Does the breach of the terms of the bill of lading in permitting an inspection of the goods covered thereby in an interstate shipment render the railway company liable in damages where there is no actual loss of goods or actual injury thereto? The plaintiff claims to have been damaged by the refusal of the commission company to accept the hay after being improperly permitted by the defendant to inspect the same. Our attention has not been directed to any decision in this state on this question. Before congress legislated upon this matter it was a proper subject for state legislation in aid of commerce and in the rightful exercise of the powers of the state to regulate the rights and duties of persons and corporations within its limits. But in June, 1906, congress passed what is known as the Carmack amendment to the interstate commerce act, one paragraph of which is as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: *Provided*, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." (34 U. S. Stat., ch. 3591, § 7.)

It was held by the supreme court of the United States in the case of *Adams Express Co. v. Croninger*, 226 U. S. 491:

"A *proviso* reserving certain rights of action will not be construed as nullifying the statute itself and maintaining the existing confusion which it was the purpose of congress to put an end to; and so held that the *proviso* in the Carmack amendment related to remedies under existing federal law at the time of this action and not to any state law." (Syl.)

In a later case it was said by the same court:

"Rights and liabilities of parties to an interstate shipment by rail depend upon acts of congress, the bill of lading, and common-law principles as accepted and applied in federal tribunals." (*Cincinnati & Tex. Pac. Ry. v. Rankin*, 241 U. S. 319, syl.)

A case very similar to ours was recently decided by the supreme court of Texas where the purchaser was permitted to inspect a carload of apples and then rejected the shipment, the terms in the bill

of lading being identical with those in the instant case, and defendant railroad company was held not liable for any damages, not even nominal.

"Though the inspections were deemed unauthorized, no damages proximately resulting therefrom were shown. No injury to the shipment was caused by the inspection. Permitting it could not be treated as a conversion by the carrier as by misdelivery. If rejection by the purchaser was justified the shipper was not entitled to damages; if unjustified he was not deprived by the inspection and rejection of his right to recover from the purchaser the agreed price.

"Permitting the inspection was not such a breach of the carrier's contract with the shipper as entitled the latter to recover, at least, nominal damages." (*Hines v. Scott*, 112 Tex. 506, syl. ¶¶ 3, 4.)

In a recent case of the same kind the supreme court of Missouri reviewed a number of decisions on this subject and concluded its opinion as follows:

"In view of the authorities we have cited, we hold that plaintiff cannot recover in conversion. Its action, if any, is for any damage done to the corn or resulting to the corn by reason of the unauthorized inspection." (*Bernie Mill & Gin Co. v. St. Louis Southwestern Ry. Co.*, [Mo. App.] 228 S. W. 847, 849.)

In the case of *Earnest v. Delaware, L. & W. R. Co.*, 134 N. Y. Supp. 323, it was held:

"The initial carrier transporting apples from one state to another issued the uniform bill of lading, providing that no inspection should be allowed unless permission was indorsed, that was approved by the Interstate Commerce Commission as in accordance with the Carmack amendment . . . providing that the initial interstate carrier should be liable for all injuries by the connecting carrier. The connecting carrier allowed an unauthorized inspection of the goods, which were not injured by the inspection, though the consignee refused to accept them in accordance with its oral contract of purchase. *Held,* that the initial carrier was not liable for conversion, there being no damage to the goods." (Syl. ¶ 5. See, also, *Dudley v. Railway Co.*, 58 W. Va. 604, and *Lyons v. Hill,* 46 N. H. 49.)

It is certainly made very plain by these decisions in the interpretation placed upon the Carmack amendment that damages are absolutely limited to the loss of goods or the injury done to them. But the appellee claims nominal damages and the court instructed for the same. The Texas case above cited held there could not even be nominal damages. Can there be nominal damages where there is no possibility of actual damages? The amendment eliminates the damages which the appellee urges as caused by the rejection of the hay by the purchaser, that is, damages for the disappointment and

inconvenience of losing the sale theretofore made. Nominal damages cannot be based on any such loss or inconvenience. The only damages allowable must be because of injury to the hay or loss of a part of the hay itself. What are nominal damages, and on what must they be based?

"Those awarded where, from the nature of the case, some injury has been done, the amount of which the proofs fail entirely to show." (3 Bouvier's Law Dictionary, p. 2353.)

"Nominal damages are a small and trivial sum awarded for a technical injury due to a violation of some legal right, and as a consequence of which some damages must be awarded to determine the right." (17 C. J. 714.)

"Nominal damages arise by implication of law for the violation of the rights of another from which injury arises, but which are either incapable of ascertainment, or the value of which the proof wholly fails to show." (*Telegraph Co. v. Lawson*, 66 Kan. 660, 662, 72 Pac. 283.)

We conclude that the petition did not state a cause of action in alleging breach of contract by permitting an inspection of the hay, and that the defendant was not liable even for nominal damages when there was no actual injury to or loss of any part of the hay.

We will pass over the question of agency and authority of the assistant freight agent at Kansas City to make a binding contract with the plaintiff and consider the question of consideration for the alleged oral contract set out in plaintiff's petition. The appellee insists that the breach of the provisions of the bill of lading by the defendant company in permitting the inspection of the hay was a sufficient consideration for the oral contract, and the court in the instructions included the breach as if it might be a consideration. Appellee also urges as a consideration the desire and anxiety of the company to have a satisfied customer, and the going home of the plaintiff at the request of the agent instead of remaining in Kansas City and caring for the hay himself as he would have done had it not been for the oral agreement; that it was in the nature of a compromise with a disappointed and dissatisfied customer. What has already been said as to the breach of the provisions of the bill of lading will be sufficient to dispose of that as being a consideration, because if there was no liability for such breach it lacks all the elements necessary to make it a consideration for anything. Neither will the fact that the parties for the time being supposed there was a liability for such breach make it a valid consideration, because that was a matter of law and very different from a matter of fact, on which there always exists room for doubt, which

in itself is a suitable consideration for a compromise. Neither does the desire to appease a dissatisfied customer, nor the success of the attempt to get him to go home, meet the requirements as to a sufficient consideration when they necessarily relate to a proposition on which there was no legal liability or obligation. There must be some benefit to the party promising or some loss or detriment to the party to whom the promise is made.

"The compromise of a doubtful and disputed claim will furnish a good consideration. . . . On the other hand, if the party knows or ought to know that the claim has no foundation, it is not a consideration." (13 C. J. 349, 350.)

"An agreement to forbear and forbearance from issuing execution on a judgment, which clearly has no legal existence and on which no execution could lawfully issue, are not sufficient consideration for a new promise on the part of a supposed judgment debtor." (*Price v. Bank,* 62 Kan. 743, syl. ¶ 1, 64 Pac. 639.)

"It is not essential that the consideration shall flow direct from one party to the other, but there must be some benefit flowing to the obligor which he would not have received but for the contract." (*Farmers Equity Coöp. Ass'n v. Tice,* 122 Kan. 127, syl. ¶ 3, 251 Pac. 421.)

There was error in failing to sustain the motion to strike out that part of the petition referring to the oral contract made by the assistant freight agent with the plaintiff, for the reason that it did not state facts sufficient to constitute a cause of action.

The judgment is reversed and cause remanded with instructions to render judgment for defendant for costs.