### RUDIN v. STEINBUGLER et al.
### No. 280.

Circuit Court of Appeals, Second Circuit.
April 10, 1939.

Robinson, Hennessy & Weitzer and Barber, Fackenthal & Giddings, all of New York City (Joseph S. Robinson, of New York City, of counsel), for appellants.

Rabe, Keller & Davis, of New York City (James A. Davis and Leon Quat, both of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

On January 31, 1938, George E. Steinbugler, an attorney at law, was adjudicated bankrupt upon his voluntary petition. His trustee in bankruptcy brought suit in the district court to set aside transfers of property to the bankrupt's wife which were alleged to be fraudulent as to creditors. The bankrupt, his wife and Park Equine Amusement Corporation were named as defendants. They have appealed from a decree in favor of the plaintiff.

The questions raised are chiefly questions of fact. The first is whether the bankrupt was insolvent on December 20, 1936, on which date he claims to have made a gift to his wife of all the stock of said Amusement Corporation by delivering to her unendorsed stock certificates. We may assume that the fact of non-endorsement of the certificates would not prevent the transfer from being an effective gift. Miller v. Silverman, 247 N.Y. 447, 450, 160 N.E. 910. But since the transfer was without consideration it was presumptively fraudulent as to existing creditors. Ga Nun v. Palmer, 216 N.Y. 603, 611, 111 N.E. 223; Feist v. Druckerman, 2 Cir., 70 F.2d 333. That presumption was not repelled; on the contrary, the district court found that the bankrupt was insolvent on the critical date. It is admitted that his debts were $16,800 and his assets, exclusive of three disputed items, only $10,724. With those items included, assets would have exceeded admitted liabilities by $2,400.

One of the excluded items was the bankrupt's one-third interest in certain real estate known as Howard Beach lots. He testified that these lots had been purchased for $6,400, and asserts that his interest therein should have been valued at one-third of this sum. While the cost of property may be some evidence of its value at another date, if sufficiently close in point of time, that principle cannot aid the appellants here, for the record is bare of any evidence as to when the lots were purchased. They may have been bought at the peak of the boom market and have greatly depreciated during the years of the depression. The bankrupt had conveyed away his interest in these lots by a warranty deed dated June 18, 1935, which he testified was intended as a mortgage, although he did not list his interest in the lots as an asset in his bankruptcy schedules. But assuming that he had an interest in the lots on December 20, 1936, there is absolutely no proof as to what it was then worth.

Another disputed item was $650 invested in New York Avenue property. It is unnecessary to recite the nature of this investment. The district court referred to it as "a speculative enterprise"; it was lost in 1937. To place any value upon it in December, 1936, would have been pure conjecture.

The third item was the bankrupt's vested remainder, subject to the life tenancy of his mother who was nearly eighty years of age, in one-seventh of the estate of his deceased father. The bankrupt attempted to prove the value of his vested remainder by offering the books of account of the estate, which showed that one-seventh of the net estate on December 31, 1936, was $5,699.92. These books were excluded from evidence, and that ruling is complained of.

Whether it was right or wrong we need not decide. Since items one and two were properly excluded, the bankrupt would have been insolvent even if his vested remainder had been accepted at the value claimed. But that valuation was obviously excessive. It allowed nothing for the outstanding life estate of the mother, and it treated as worth their face amount claims of the father's estate against the bankrupt. The bankrupt himself, in his schedules, valued his vested remainder as worth only $1,500. We conclude that the finding of insolvency on December 20, 1936, was amply justified.

The appellants further contend that the plaintiff failed to prove that the stock of the Amusement Corporation had any value at the time of its transfer. The record refutes this contention. The corporation was organized in the summer of 1935 to operate a pony track and riding school in Prospect Park, Brooklyn. In December of that year the bankrupt purchased 50 per cent. of its stock for $850, thus becoming the sole stockholder. During the year 1936 the pony track business conducted in the name of the corporation, netted the bankrupt about $3,000, and a like sum in 1937 for, despite the alleged gift of the stock to his wife, he continued to take the receipts and pay from his personal account the expenses of the business. If the corporation is to be treated as a juristic person separate and apart from its sole stockholder (and the appellants so treat it), their contention is futile that stock of a corporation yielding such net returns was worthless.

The second transaction which the decree set aside was a purported transfer from the Amusement Corporation to the bankrupt's wife of all its ponies and equipment in consideration of her agreement to pay certain debts of the bankrupt and of the corporation. This transaction took place on January 10, 1938—the very day on which Hashagen, a former client of the bankrupt, obtained a judgment against him for some $8,600. The district court found that this transfer was made by the bankrupt with the intent to defraud his creditors and that his wife participated in such intent. This finding is amply supported by the record and is not challenged by the appellants, their contention being that the property transferred belonged to the corporation, not to the bankrupt, and therefore can not be reached for the benefit of his creditors. But this contention is based on a fallacious premise, for the district court expressly found that the ponies and equipment were really the bankrupt's property; that he disregarded the corporation and carefully omitted all formalities necessarily attendant upon the preservation of the corporate entity; and that he recognized the corporation as a mere dummy and "a department for his own activities." This conclusion is fully justified. No corporate stock records or books of account were kept; no income tax or other tax reports were filed; no elections or corporate meetings held, except the one directors' meeting which purported to authorize the transfer of January 10, 1938; no dividends were declared, although the bankrupt received the net income of the business; and on November 20, 1936, he executed in the name of the corporation a chattel mortgage as security for his individual debt. Under the circumstances disclosed by the record the corporate entity was properly disregarded by the district court. Irving Trust Co. v. Kaminsky, D. C., 22 F.Supp. 362; Kimmelsman v. Bishop, 251 App.Div. 724, 295 N.Y.S. 601.

To operate the pony track in Prospect Park required a license from the Commissioner of Parks. The license held by the bankrupt in the name of the Amusement Corporation was to expire on December 31, 1937. It was renewed for the year 1938 in the name of the bankrupt's wife. Negotiations looking toward such change were begun in November or December, 1937, when the Hashagen suit was nearing trial; and they were successfully concluded two days after his judgment was obtained. The court found that the acquisition of the 1938 license by Mrs. Steinbugler was part of a fraudulent scheme to put the pony enterprise beyond reach of the bankrupt's creditors, and decreed that the license, as well as the ponies and their equipment, was held by her on a constructive trust for the benefit of the trustee in bankruptcy, and that she must account for whatever she made from operating the pony track business. This part of the decree is vigorously attacked upon the ground that the 1938 license ran to the wife and was never the property of the corporation or the bankrupt. Nevertheless, the wife was in a position to apply for it solely because of the fraudulent transfer to her of the ponies and equipment, and because the bankrupt consented

to give up his "expectancy" of renewal in the corporate name. Cf. Robinson v. Jewett, 116 N.Y. 40, 22 N.E. 224, and. Meinhard v. Salmon, 249 N.Y. 458, 164 N. E. 545, 62 A.L.R. 1, as to expectancy of renewal of lease; In re John F. Doyle & Son, 3 Cir., 209 F. 1, as to expectancy of renewal of liquor license. The profit, if any, which she earned from operating the pony track was derived from use of the fraudulently transferred chattels as well as from the privileges obtained from the Commissioner of Parks, and the purpose of operating in her name was to put such profits beyond the reach of her husband's creditors. Such profits equitably belonged to the husband's creditors. 3 Pomeroy, Eq.Jurisprudence, 4th ed., § 1050. Whether on her accounting she will be entitled to any credit for her own services or for payment of the debts she agreed to assume, if she performed such agreement, are questions not now before us.

Decree affirmed.