### CRENSHAW v. McKINLEY et al.
### No. 56.

Circuit Court of Appeals, Second Circuit.

Jan. 13, 1941.

878

Root, Clark, Buckner & Ballantine, of New York City (John E. F. Wood and Lyman M. Tondel, Jr., both of New York City, of counsel), for appellant.

David W. Kahn, of New York City, for McKinley & Co., Inc., and Lindsay Parker McKinley.

Wachtell, Manheim & Grouf, of New York City (Myron K. Wilson, of New York City, of counsel), for Marjorie M. McKinley and Marie Pierce.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The appellant is the trustee in bankruptcy of Lindsay Parker McKinley who filed a voluntary petition in the District Court for the Southern District of New York on December 18, 1937, and was adjudicated a bankrupt on December 20, 1937.

Invoking Federal jurisdiction under the provisions of the Bankruptcy Act, the appellant on December 6, 1939, sued the bankrupt's wife, Marjorie M. McKinley; McKinley & Company, Inc., a New York corporation of which she had been the sole stockholder; and the bankrupt, his wife and Marie Pierce as co-partners doing business under the firm name and style of McKinley & Company; to set aside alleged fraudulent transfers of assets made by the

bankrupt and for an accounting. The parties were all alleged to be citizens of New York. The complaint set up two causes of action but only the second is involved in the appeal. The defendants moved to dismiss the second cause of action (1) for failure to state a cause of action and (2) for lack of jurisdiction. The motion was granted and the plaintiff has appealed.

It was alleged that on February 2, 1930, when the bankrupt owed each of three creditors, whose claims have been proved and allowed, thousands of dollars aggregating over half a million, and was insolvent to the knowledge of all the defendants, he secured loans on his credit from one Schwarz and one Baettenhousen to the amount of $10,000 and "caused notes in that amount of the defendant Marjorie M. McKinley to be given to said Schwarz and Baettenhousen;" that he and his wife on or about that date conceived a scheme whereby he was to continue in his business as a stockbroker and investment advisor in which he had "a great financial reputation" and possessed "a valuable following of customers" and would do so "in such a manner that his creditors would be unable to reach the fruits of his labor".' That the bankrupt and his wife on or about February 7, 1930, caused the New York corporation of McKinley & Company, Inc., to be organized to carry on the business which had formerly been done by a dissolved partnership, McKinley & Company, of which the bankrupt had been a member and that they caused all of the stock of the corporation to be issued to the wife for the $10,000 borrowed on the credit of the bankrupt; that the scheme was "formulated * * * with the intent and purpose of defrauding the creditors of said Lindsay Parker McKinley;" that the corporation "made large sums of money solely through the reputation, efforts and skill of the defendant Lindsay Parker McKinley and paid out dividends from its earnings to the defendant Marjorie M. McKinley, claiming that she was the sole stockholder of said corporation, whereas in truth and in fact said Marjorie M. McKinley held the said stock under said scheme or plan merely as a nominee of said Lindsay Parker McKinley and as a step in said plan or scheme to withhold the earnings of said defendant Lindsay Parker McKinley from his creditors."

It also alleged that the bankrupt and his wife caused the corporation to pay Messrs. Schwarz and Baettenhousen $9,000 during the first year of its existence and reduced its capital to $1,000 and that in 1931 the remaining $1,000 was paid to the lenders "with funds supplied by the defendant Lindsay Parker McKinley". Also, that the corporation continued in business until January 17, 1939, when it was dissolved and its assets transferred to a new partnership, McKinley & Company, in which the bankrupt, his wife, and Marie Pierce were the co-partners. And finally, that the bankrupt and his wife caused the corporation to pay her "various sums of money allegedly as salaries, although said Marjorie M. McKinley rendered no services to said corporation".

Although the motion to dismiss the complaint was based on the two grounds above stated, they really merge for present purposes for we are only concerned with whether or not a good cause of action was alleged over which the district court had jurisdiction. The parties are all citizens of the same state and Federal jurisdiction is based upon Sec. 70, sub. e(1) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e(1), which provides that, "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act [title] which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act [title], shall be null and void as against the trustee of such debtor".

The term "transfer" as used in this section has a broad meaning and includes not only a sale but every manner of disposing or parting with property in contravention of the statute. Pirie v. Chicago T. & T. Co., 182 U.S. 438, 21 S.Ct. 906, 45 L.Ed. 1171. But the section only applies when there has been a transfer of property which creditors of the bankrupt could have avoided and the primary problem is to determine whether what has been alleged shows that the bankrupt did in any way part with his property. Harris v. First National Bank, 216 U.S. 382, 30 S.Ct. 296, 54 L.Ed. 528. The allegation that he borrowed the ten thousand dollars "on his credit" is followed by one showing that it was borrowed on notes signed only by his wife. There is not only no allegation that he ever became liable to repay the loan but one which negatives even an inference that he did. Nor is there any

allegation that she gave him the money after it was borrowed. So far as facts are alleged, the ten thousand dollars was borrowed on her notes and she alone owned that money and was liable on her notes. The lenders may have been willing to make the loan to him but the fact remains that they did not do so. Such a willingness on their part was not what the law recognizes as his property. The appellant has argued that the insolvent's credit, as it is called, was an expectancy analogous to the right to the renewal of the license in Rudin v. Steinbugler, 2 Cir., 103 F.2d 323 but the difference is plain enough. Where there is a transfer of property which carries with it some right to bargain for economic advantage which the law recognizes like the good will of a business or the right to secure a license to do business, there may be the transfer of an expectancy which is itself property but here the insolvent had nothing of the kind to transfer. He had a knowledge of his business and a reputation which would attract customers to a new one managed by him which, we may assume, made the lenders willing to lend his wife the money to finance a business he was to manage but that, called "his credit", did not amount to property which could be transferred to the detriment of his creditors.

The appellant is actually attempting to recover on the theory that an insolvent must work for his creditors if he works at all; that he has no right to work for his wife under an arrangement which disposes of his earning power to her advantage; and that property acquired by her as a result of his labor is, nevertheless, his property as a matter of law and subject to the claims of his creditors.

■ This theory is but one of economic slavery which is not supportable in law. An insolvent may dispose of his earning power as he will. Provided only that he does not himself keep the fruits of it under an arrangement that is but a sham and a cover to hide it from his creditors when and after he receives it. He may work or not as he pleases and, if he works, he is under no obligation to his creditors to take and hold what he earns for their benefit. Rowe v. Drohen, 2 Cir., 262 F. 15; Abbey v. Deyo, 44 N.Y. 343; Silberberg v. Wember, 173 App.Div. 717, 159 N.Y.S. 843.

■ There is, however, an allegation that a payment of $1000.00 was made upon the loan with funds supplied by the insolvent. To that extent his property may have been used to pay his wife's debt. But there is no allegation that that money was transferred to any of these appellees nor any allegations respecting the circumstances of the transfer to show that it was fraudulent. Perhaps such deficiencies in the complaint could be obviated by amendment and the needed new parties brought in but the appellant has set forth in his brief, in connection with his suggestion that an opportunity be given to amend, a statement which we take to be comprehensive showing what he believes are the facts and which adds nothing to what the complaint contains regarding the payment of the one thousand dollars. There is no prayer for relief in respect to that payment and we, accordingly, take it for granted that the needed amendment could not be made. The complaint being insufficient in that it failed to state a cause of action under the Bankruptcy Act, the motion to dismiss it had to be granted as there was nothing else to bring it within the jurisdiction of the district court.

The allegations to the effect that the insolvent and his wife carried out a fraudulent scheme to cover up his earnings by having them appear to belong to her as the sole stockholder in the corporation for which he worked while in truth he was the equitable owner of all its shares may set forth a cause of action of which the state court has jurisdiction but they tend to negative any transfer of the shares by the insolvent fraudulent or otherwise. He never had the legal title to them or to the money for which they were issued to her and he transferred nothing if by agreement between him and her they were to be his shares. On neither theory, therefore, has the plaintiff alleged any transfer of property by the bankrupt and, regardless of what remedy he may have in the state court, his second cause of action was properly dismissed.

Affirmed.