Israel G. HALPERT, as Trustee in Bankruptcy of The Carburetor Corporation, Plaintiff,

v.

ENGINE AIR SERVICE, Inc., Lawrence A. Hauft, Lena P. Hauft, Walter S. Burfoot and May D. Burfoot, Defendants.

Civ. A. No. 13618.

United States District Court,
E. D. New York.

April 27, 1955.

Max Schwartz, William J. Rudin, Brooklyn, N. Y., of counsel, for trustee.

Moore & Swartz, Garden City, N. Y., James G. Moore, Emerson A. Swartz, Garden City, N. Y., of counsel, for defendants.

GALSTON, District Judge.

This is a plenary suit brought by the plaintiff, as trustee in bankruptcy, to recover property, assets and effects which the plaintiff alleges belonged to the bankrupt at the time of their wrongful seizure by defendant. Plaintiff alleges that the wrongful seizure constituted both a fraudulent and a preferential transfer, recoverable by the plaintiff as trustee under and by virtue of the provisions of Section 70 of the Bankruptcy Act, Section 110, Title 11 U.S.C.A. The complaint also alleges that the action is brought pursuant to Sections 15 and 59 of the New York State Stock Corporation Law. McK.Consol.Laws, c. 59, Section 60 of the General Corporation Law, McK.Consol.Laws, c. 23, Section 65 of the Personal Property Law, McK.Consol.Laws, c. 41, and Article 10 of the Debtor and Creditor Law, McK.Consol. Laws, c. 12.

Prior to the trial, summary judgment in favor of the trustee was reversed and the petition dismissed by the Court of Appeals for the Second Circuit, In re Carburetor Corp. (Halpert v. Engine Air Service, Inc.), 1953, 202 F.2d 75, certio-

rari denied, 1953, 345 U.S. 957, 73 S.Ct. 939, 97 L.Ed. 1378.

Subsequent to the reversal a new complaint was filed on June 23, 1953. A motion was then brought before Judge Bruchhausen to dismiss the complaint. In an opinion dated October 27, 1953, Halpert v. Engine Air Service, Inc., D.C., 116 F.Supp. 13, Judge Bruchhausen concluded that while the court had jurisdiction of this action under Section 70 of the Bankruptcy Act, all causes of action under Sections 60, subs. a, b, 67, subs. a and b of the Act, 11 U.S.C.A. §§ 96, subs. a, b, 107, subs. a, b were barred by the two year statute of limitations contained in Section 11, subsection e of the Act, 11 U.S.C.A. § 29, sub. e. The opinion also stated that the plaintiff was not precluded from pursuing causes of action grounded on State law which are not barred by the limitation of time provisions prescribed by State law.

Judge Bruchhausen denied the motion to dismiss the complaint, but did dismiss those causes of action alleged to arise under Sections 60, subs. a, b, 67, subs. a, b of the Bankruptcy Act, and permitted the plaintiff to file an amended complaint.

After the filing of the amended complaint the defendant moved for judgment on the pleadings. This motion was denied by Judge Byers, D.C., 131 F.Supp. 402, who wrote:

"If the amended complaint is substantially the same as the original, restricted however to the assertion of a claim for relief under Section 70 of the Act, the law of the case has been established with reference thereto, and the present task is restricted to an examination of the challenged pleading to discover if new issues are presented.

"That process reveals that again five 'causes of action' are pleaded, in 181 numbered paragraphs, as against 172 in the original complaint. The added paragraphs do not assert new or different alleged causes of action, but merely contain evidentiary and perhaps argumentative allegations which do not expand or alter the nature of the plaintiff's claim for relief as set forth in the original complaint.

\* \* \* \* \* \*

"Motion denied, without prejudice to the renewal thereof in whole or in part at the trial, as the defendants may be advised."

The motions were renewed at the beginning of the trial and again at the close of the plaintiff's evidence. The court reserved decision on the motions.

The Carburetor Corporation, the bankrupt, is a New York Corporation organized in 1948 to engage in the business of overhauling carburetors and other engine accessories. Its authorized capital stock consisted of 2,000 shares of non-voting stock which was never issued and 3,000 shares of class A with voting rights, of which 1,000 shares were issued to George Staley, and 500 shares each to Lawrence A. Hauft, Lena P. Hauft, Walter S. Burfoot and May D. Burfoot.

The defendant, Engine Air Service, is also a New York Corporation, and was organized to engage in the business of overhauling airplane engines. It had an authorized capital stock of 100 shares which was held by the Haufts and the Burfoots in equal amounts of 25 shares each.

Until the start of the series of events in 1949 which culminated in this lawsuit, Engine Air Service engaged in business at 199 East 2d Street, Mineola, New York, where it owned real estate and a substantial amount of machinery, tools, trucks, supplies and office equipment.

Part of the premises at the above address was used by the now bankrupt Carburetor Corporation in the conduct of its business. It used the northwesterly 3,000 square feet of the plant in which it installed its own machinery and equipment.

Prior to April 1949 it is clear that although some of the individuals involved were stockholders, officers and directors of both corporations, each corporation

operated as a separate and distinct entity with its own employees, bank accounts, machinery, equipment, inventory, stationery and books. Each sent out its own bills and collected its own moneys.

In April of 1949 two new faces appeared upon the scene. They were Kenneth Guiterman and his son Franklin. They were interested in purchasing the control of the two corporations.

On April 26, 1949 the Guitermans received from the two Burfoots and Staley an option to purchase their stock in the Carburetor Corporation. It was exercisable during the two year period from that date.

The same day the same parties executed a voting trust agreement under which the Guitermans, as trustees, became entitled to "exercise all stockholders' rights of every name and nature * * * as though absolute owners of the (Carburetor) stock."

At the same time a third document was executed by the same parties which provided for the eventual distribution of Carburetor's class A stock so that Burfoot and Staley would hold 49% and the Guitermans 51%.

On May 2, 1949 the Haufts agreed to sell their Carburetor stock to the Guitermans for $50,000. Payment was made on or about August 1, 1949.

On May 4, 1949 the Carburetor Corporation executed an agreement to purchase all of the stock of the Engine Air Service from the Haufts and Burfoots for $252,000. The agreement of May 4 provided that the stock should be placed in escrow, to be transferred and delivered to the purchaser only as prescribed payments were made. The stock, however, was never placed in escrow and the sellers remained in possession at all times. That agreement provided that "until payment in full of all amounts due under the terms of this agreement, none of the plant or equipment now or hereafter owned by the First Party or the corporation shall be removed, permitted to be removed, disposed of or destroyed, unless the same shall be replaced by property of the same type or character, at least equal in value to that so removed; nor shall the real estate be sold or conveyed by the corporation to any person or corporation." Upon failure to make payments as due, the stock was to revest in the Burfoots and Haufts.

By a document dated June 1, 1949, all the physical assets, properties and inventories of Air Engine were leased to the Carburetor Corporation for the rental of $1 per month. The lease provided that the inventory of Air Engine might be depleted, but there was to be an accounting for such inventory at stated intervals. The lease provided that: "For a proper determination of amounts due on account of inventory, pursuant to the provisions of paragraph 2 hereof, the Second Party agrees to cause all the inventory owned by the First Party to be kept separate and apart from any other property and to keep true and accurate records of any items removed therefrom." Carburetor also assumed liability for the care, repair and replacement of the leased property, for the payment of running expenses, interest on existing mortgages and wages, and for the obligations of the lessor under its contracts.

Either party could terminate the lease on the first day of any month by giving ten days' notice of its election to terminate; and in such event, Carburetor agreed to return or account for all the property covered by the agreement, "damage by the elements and reasonable wear and tear excepted."

On December 31, 1949 the Carburetor corporation defaulted on its first payment under the purchase agreement of May 4, 1949, and on January 21, 1950 notice was given terminating the lease.

On January 23, 1950 physical repossession was taken of the Engine Air Service Plant, equipment and inventory.

From May 7, 1949 through January 21, 1950, a period of some nine months, the identity of Engine Air Service was somewhat nominal, as appears hereafter. Air Agency Certificate No. 292, author-

izing Engine Air Service, Inc. to make repairs under Specification (c), Aircraft Engines, was transferred to "The Carburetor Corporation operating Engine Air Service, Inc." and was issued on the basis of the inventory of both corporations. The insurance which Engine Air had prior thereto effected upon its real estate, machinery and equipment was changed to "The Carburetor Corporation and/or Engine Air Service, Inc." The policy of insurance issued for Workmen's Compensation and Employer's Liability read "Carburetor Corporation operating Engine Air Service."

Carburetor collected all accounts receivable owing to Engine Air as of May 4, 1949, and deposited the same to the credit of the bank account of the Carburetor Corporation. All contracts and orders on hand received by the defendant Engine Air Service were assumed and taken over by the Carburetor Corporation, which accepted, executed and completed the contracts and orders, shipped out the merchandise, billed for, collected and deposited the same in its own bank account.

The books and records of Engine Air were turned over to the Carburetor, and the only entries thereafter made in these books between May 7, 1949 and January 23, 1950 were periodic bookkeeping entries with respect to accounts between both corporations.

The Carburetor Corporation made all business commitments either for the purchase of merchandise or for the improvements to the real estate in the name of The Carburetor Corporation, The Carburetor Corporation operating Engine Air Service, Inc., and Engine Air Service.

The Carburetor Corporation used stationery bearing the title, "The Carburetor Corporation operating Engine Air Service."

All employees were on the payroll of the Carburetor Corporation. It maintained all necessary records for the employees such as withholding forms, social security tax returns, and paid the taxes due thereon.

Neverthless it should be noted that during this period the only sign on the building was that of Engine Air Service. There were no marks or tags on the machinery or equipment so as to identify the owner thereof until October or November of 1949, when St. John, a Carburetor employee, placed gummed tape on the Carburetor machinery. Separate inventory record cards were maintained for the inventory of each company. During the May 7 to January 23 period, the Carburetor Corporation, under its own name, continued a building alteration and enlargement programs which had been commenced by Engine Air.

The conditions which existed and the operating procedures which were followed during this period were known to the Haufts and Burfoots. Walter Burfoot was an employee of the Carburetor Corporation from May 7, 1949 through January 21, 1950, and was at the premises daily. He also had occasion to examine the books of the corporations. Lawrence Hauft visited the premises several times, saw the alteration work proceeding, and spoke with Burfoot and Staley relative to the financial condition of Carburetor.

On January 23, 1950, Air Engine resumed its full identity. The status which existed prior to May 1949 was resumed; it conducted its own business and completed the unfinished engine orders of the bankrupt under a stipulation as to a division of the revenue therefrom, which was approved by the referee in bankruptcy.

On February 24, 1950, Carburetor filed its petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and on April 20, 1950 it was adjudicated a bankrupt.

The trustee in bankruptcy now seeks to recover the assets of Engine Air Service, alleging that they were the property of the bankrupt Carburetor Corporation. It is to be noted at this point that the

trustee did not adopt the agreement of May 4, 1949.

Neither the lease of June 1, 1949 nor the agreement of May 4, 1949 *transferred* the property to the plaintiff. At most a leasehold interest was given by the June 1 document, but this interest was not transferred back to defendant. It was terminated pursuant to the ten day clause of the termination of the contract.

■ Under the law of New York there was no merger of the two corporations, for Carburetor never owned 95% of the stock of Engine Air Corporation. Section 85, New York Stock Corporation Law.

■ From a review of all the agreements and of all of the actions taken thereunder, and more particularly from the failure of the parties to effect a payment under the agreement of May 4, 1949, it must be concluded, as the defendant contends, that the plaintiff has failed to prove that property of the bankrupt was conveyed in fraud of the bankrupt's creditors. The defendant was entitled to give notice of the termination of the agreement of June 1 hereinbefore stated, and to take possession of its property.

Finally the trustee urges that the corporate entity of Engine Air Service be disregarded and that the court acknowledge that there was what the trustee calls a de facto merger. The cited cases, however, are not in point with the instant fact situation. In all of the cited cases the court either held the parent corporation liable for the debts of the subsidiary, thus "piercing the corporate veil" or held that the claims of the parent were subordinate to those of other creditors because of the control or identity of the parent with the subsidiary. See Henry v. Dolley, 10 Cir., 99 F.2d 94; Taylor v. Standard Gas & Electric Co., 10 Cir., 96 F.2d 693; Id., 306 U.S. 307, 618, 59 S.Ct. 543, 83 L.Ed. 669; Consolidated Rock Products Co. v. DuBois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982; In re V. Loewer's Gambrinus Brewery Co., 2 Cir., 167 F.2d 318; Stone v. Eacho, 4 Cir., 127 F.2d 284; Hollander v. Henry, 2 Cir., 186 F.2d 582, certiorari denied 341 U.S. 949, 71 S.Ct. 1017, 95 L.Ed. 1373.

In none of the foregoing cases was there a holding that the property of the subsidiary or instrumentality became the property of the parent.

■ Thus, the trustee having failed to show a transfer of the property of bankrupt, this court is without jurisdiction over the subject matter. Park v. Cameron, 237 U.S. 616, 35 S.Ct. 719, 59 L.Ed. 1147; Crenshaw v. McKinley, 2 Cir., 116 F.2d 877.

The motion to dismiss the complaint made at the close of the case is granted. Settle order.

Appropriate findings of fact and conclusions of law will be filed concurrently with this opinion.